UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00163-GNS-LLK

ALDRIDGE ELECTRIC, INC.                                        PLAINTIFF

v.

AMERICAN MUNICIPAL POWER, INC.                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) (DN 10). For the following reasons, the motion is **GRANTED**. Counts I, IV, and V are **SEVERED** and **TRANSFERRED** to the U.S. District Court for the Southern District of Ohio, and Counts II and III are **STAYED** in this Court.

## I.   BACKGROUND

This case involves a dispute between American Municipal Power, Inc., ("Defendant") an Ohio corporation with its principal place of business in Ohio, and Aldridge Electric, Inc., ("Plaintiff") a Delaware Corporation with its principal place of business in Illinois, regarding a construction project located in Kentucky. (Notice Removal Ex. A, ¶¶ 2-3, DN 1-1 [hereinafter Compl.]).

In 2011, Defendant hired C.J. Mahan Construction Company ("Mahan") to construct a hydroelectric facility known as Smithland Hydroelectric Project at the Smithland Locks and Dam located near Smithland, Kentucky. (Compl. ¶¶ 6-7). Mahan then entered into a subcontract ("Subcontract") with Plaintiff to perform electrical services on the Smithland Hydroelectric Project. (Compl. ¶ 8). The Subcontract incorporated by reference the general conditions of the

principal contract entered into by Mahan and Defendant. (Def.'s Ans. Ex. B, at 2, DN 7-2 [hereinafter Subcontract]). One of the conditions was a forum selection clause that provides:

> Any suit, which may be brought to enforce any provision of this Contract or any remedy with respect hereto, shall be brought in the Common Pleas Court, Franklin County, Ohio or US District Court—Southern District of Ohio, and each party hereby expressly consents to the jurisdiction of such court.

(Subcontract 18). The Subcontract was subsequently assigned to Defendant. (Def.'s Ans. Ex. C, at 1-4, DN 7-3).

Plaintiff filed this action on September 21, 2016, in Livingston Circuit Court in the Commonwealth of Kentucky. The Complaint asserts claims against Defendant for declaratory judgment, breach of contract, and quantum meruit/unjust enrichment. (Compl. 11-22). The Complaint also asserts a claim to enforce a mechanics' lien pursuant to KRS 376.010, and a claim to enforce a public improvement mechanics' lien under KRS 376.210(1). (Compl. 13-21). Defendant timely removed the action to this Court on October 13, 2016. (Notice Removal, DN 1).

Defendant seeks to transfer the case in its entirety to the U.S. District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). (Def.'s Mot. Transfer, DN 10 [hereinafter Def.'s Mot.]). Defendant contends that venue is improper in this Court because of a forum selection clause in the Subcontract. (Def.'s Mot. 5-10). In the alternative, Defendant seeks to transfer the substantive contract claims set forth in Counts I, IV, and V, and sever and stay the lien claims asserted in Counts II and III in this Court. (Def.'s Reply, DN 29).

## II.    STANDARD OF REVIEW

A motion to transfer pursuant to a contractual forum-selection clause is properly viewed as a motion to transfer venue under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 134 S. Ct. 568, 575 (2013). Section 1404(a) provides that "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).   The district court must first determine if the forum-selection clause is valid and enforceable by considering:  "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust."  *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)).  "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced."  *Id.* (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)).  If the clause is found to be enforceable, it is the duty of the court to transfer the case unless "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."  *Atl. Marine Constr. Co. Inc.*, 134 S. Ct. at 575.

## III.   DISCUSSION

### A.   Transfer of Contract Claims to the Southern District of Ohio

First to be considered is whether the substantive contract claims should be transferred to the Southern District of Ohio.  Plaintiffs argue that the forum selection clause should not be enforced because Kentucky has a strong public policy in having courts in Kentucky decide lawsuits that enforce the Kentucky Fairness in Construction Act ("KFCA"), KRS 371.400-.425. (Pl.'s Resp. Def.'s Mot. Transfer 2, DN 25 [hereinafter Pl.'s Resp.]).

#### 1.   *Enforceability of the forum-selection clause*

"Whether a forum selection clause can be enforced is a matter of federal procedure and thereby decided under federal law."  *Williams v. CIGNA Corp.*, No. 5:10-CV-00155, 2010 WL

5147257, at *3 (W.D. Ky. Dec. 13, 2010) (citing *Wong*, 589 F.3d at 827).  Federal law strongly favors forum selection clauses as they are presumed valid and control, absent a strong showing that the provision should be set aside.  *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972).  "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced."  *Wong*, 589 F.3d at 828 (citation omitted).  A forum-selection clause will be "held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  *M/S Bremen*, 407 U.S. at 15 (citation omitted).

Plaintiff argues that the forum-selection clause at issue contravenes a strong public policy of Kentucky embodied in the Kentucky Fairness in Construction Act ("KFCA") that requires venue in Kentucky regarding disputes in construction cases brought under KFCA.  The relevant portion of the KFCA states:

> In any action to enforce KRS 371.400 to 371.425, including arbitration, the court or arbitrator shall award costs and reasonable attorney's fees to the prevailing party if the losing party is deemed to have acted in bad faith.  For public construction contracts, recovery of attorney's fees under this section shall be limited to the public contract rate for attorney's fees.  *Venue of such an action shall be within the Commonwealth of Kentucky.*

KRS 371.415 (emphasis added).  Initially, it must be recognized that a Kentucky statute requiring venue in Kentucky is preempted by federal venue law.  *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) (noting that federal law governs the issue of venue for cases filed in federal court, and that any statute purporting to impose state procedural rules would be preempted) (citing *Stewart Org., Inc. v. Ricoh*, 487 U.S. 22, 32 (1988)).  Thus, the enforceability of the forum-selection clause depends on whether the KFCA is indicative of a strong public policy of Kentucky.  Although there is no case on point discussing the relationship between forum-selection clauses and the KFCA, other district courts analyzing

4

similar statutory provisions have held that state statutory venue requirements are not representative of strong public policy of the state to prevent enforceability of a forum selection clause.

In *Bowen Engineering Corporation v. Pacific Indemnity Co*., 83 F. Supp. 3d 1185 (D. Kan. 2015), a district court in Kansas discussed the applicability of the Kansas Fairness in Private Construction ("KFPCA") in overriding forum-selection clauses to prevent transfer to another forum. Kansas' statute, similar to Kentucky's KCRA, required venue over construction disputes in the Kansas county in which the real property was located. *Id.* at 1192; Kan. Stat. Ann. § 16-1806. The court granted the motion to transfer and held that the statute was not indicative of a strong public policy of Kansas. *Id*. The court reasoned that although real property located in Kansas was involved, neither party in the dispute was a citizen of Kansas and Kansas courts routinely enforce forum-selection clauses in other cases. *Id*. On this basis, the court held that a strong public policy interest was not present to prevent transfer of the case. *Id*.

The *Bowen* court cited to *Whiting-Turner Contracting Co. v. Westchester Fire Ins. Co*., No. JFM-13-348, 2013 WL 3177881 (D. Md. 2013). In *Whiting*, at issue was whether "[t]he Pennsylvania Procurement Code, which . . . prohibits forum-selection provisions that require out-of-state litigation" demonstrated a strong public policy interest of Pennsylvania to override a Defendant's motion to transfer pursuant to a forum selection clause. *Id*. at *3-4. The court held that despite Pennsylvania's express disapproval of forum selection clauses in construction contracts, the statute was not suggestive of a "strong public policy" that warranted federal deference. *Id*. at *4. The court reasoned that the procurement code provision was not indicative of a strong public policy because Pennsylvania routinely enforced forum-selection clauses and its statute "reflect[ed] a 'provincial attitude regarding the fairness of other tribunals'—an attitude

5

that the Supreme Court rejected in *M/S Bremen*." *Id.* (quoting *M/S Bremen*, 407 U.S. at 12).

Numerous other district courts have similarly held that state statutes which have the effect of

limiting venue to courts in that state do not represent a strong public policy interest sufficient to

override the federal presumption of validity of forum selection clauses. *See Ablemarle Corp.*,

628 F.3d at 652; *Herr Indus., Inc. v. CTI Sys., SA*, 112 F. Supp. 3d 1174, 1180 (D. Kan. 2015);

*Brahma Grp., Inc. v. Benham Constructors, LLC*, No. 2:08-CV-970TS, 2009 WL 1065419 (D.

Utah 2009); *Chaney Trucking & Dev., Inc. v. Asset Grp., Inc.*, No. 2:16-CV-782, 2016 WL

6608390 (W.D. La. Nov. 8, 2016); *Alpha Oil & Gas Servs., Inc. v. Caliber Midstream Partners,*

*L.P.*, No. 4:14-CV-132, 2015 WL 11438184 (D.N.D. Feb. 12, 2015).

The Court holds that the KFCA does not indicate a strong public policy of Kentucky to

preclude enforceability of the forum-selection clause at issue here.  First, the KFCA does not

expressly invalidate forum-selection clauses in construction contracts.  *See Herr Indus., Inc.*, 112

F. Supp. 3d at 1180 ("The Court first notes that the Act does not expressly prohibit the use of

forum selection clauses in private construction contracts (and no court has held that the Act has

that effect); thus, the Act hardly provides a strong statement of a policy against such clauses in

such contracts.").  Second, Kentucky courts generally enforce forum-selection clauses in written

contracts.  *See Ky. Farm Bureau Mut. Ins. Cos. v. Henshaw*, 95 S.W.3d 866, 867 (Ky. 2003)

("[T]his Court held that forum selection clauses are prima facie valid and that the burden rests on

the movant to prove that enforcement is unreasonable.").  Third, neither party is a Kentucky

citizen which militates against the notion that Kentucky has a strong public policy interest in this

matter.  *Bowen Eng'g Corp.*, 83 F. Supp. 3d at 1192 (noting that the Kansas Fairness in Private

Construction Act did not represent a strong state policy interest where the parties were not

citizens of Kansas).  Moreover, although the property at issue is located in Kentucky, the

6

substantive contract claims will not be governed by Kentucky law, but by Ohio law in accordance with the choice of law provision in the Subcontract. Therefore, although Plaintiff is seeking to enforce rights under the KFCA, the Court does not believe that this statute evinces a strong public policy precluding transfer.

The enforceability of a forum-selection clause also requires that the clause be reasonable as applied. There is no question as to the reasonableness of the forum-selection clause in this instance. Plaintiff has not argued that the forum-selection clause was obtained by fraud, duress, or unconscionable means; that the Southern District of Ohio would be ineffective in handling the substantive contract claims; or that the court in Ohio would be "seriously inconvenient" to Plaintiff which is not even a Kentucky corporation. *Wong*, 589 F.3d at 828 (discussing the factors related to the reasonableness of the forum-selection clauses) (citing *Sec. Watch, Inc.*, 176 F.3d at 375. Therefore, the Court holds that the forum-selection clause at issue is enforceable.

### 2.    *Transferability*

Concluding that the forum-selection clause at issue is enforceable, next to be considered is whether the matter should be transferred to the U.S. District Court for the Southern District of Ohio. The Supreme Court recently addressed the issue of transferability of forum selection clauses in construction contracts. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 574. This Court recently explained the *Atlantic Marine* holding as follows:

> A unanimous Supreme Court held that "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Id*. at 579. Rather, "a forum-selection clause may be enforced by a motion to transfer under § 1404(a)." *Id*. at 575. According to the Court, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id*. at 581 (footnote omitted). The *Atlantic Marine* Court further counseled courts considering such motions, stating that "[t]he presence of a valid forum-selection clause requires district courts to adjust their

7

usual § 1404(a) analysis in three ways." *Id*. "First, the plaintiff's choice of forum merits no weight." *Id*. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based upon a forum-selection clause should not consider arguments about the parties' private interests." *Id*. at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." .

*Southwinds Contracting, Inc. v. John J. Kirlin Special Projects, LLC*, No. 5:16-CV-00139-TBR, 2016 WL 7031300, at *3 (W.D. Ky. Dec. 1, 2016) (quoting *Alt. Marine Constr. Co.*, 134 S. Ct. at 582). Thus, this Court will grant Defendant's motion unless it is shown that "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine Constr. Co.*, 134 S. Ct. at 575.

Following the guidance of *Atlantic Marine*, the Court must now weigh the relevant public-interest factors. *Atl. Marine Constr. Co.*, 134 S. Ct. at 582. Those factors "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. at 581 n.6 (alteration in original) (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "Because those factors will rarely defeat a transfer motion, . . . forum-selection clauses should control except in unusual cases." *Id*. at 582.

Both parties note that the Southern District of Ohio and Western District of Kentucky courts are similar in terms of the median time from filing to disposition of civil cases. (Def.'s Mot. n. 4; Pl.'s Resp. 9). Thus, this factor would not weigh for either side.

Next, the Court considers Kentucky's interest in having local matters decided in Kentucky. Plaintiff argues that Kentucky has a strong localized interest in the matter because the construction project underlying the Subcontract was located in Kentucky. (Pl.'s Resp. 8). Yet, aside from the lien claims, the gravamen of the case is a contract dispute between two diverse

8

parties that are not citizens of Kentucky, which agreed to a choice-of-law clause stipulating the application of Ohio law.  This situation hardly reflects a strong localized interest amounting to one of the "extraordinary circumstances" precluding transfer.  *Atl. Marine Constr. Co.*, 134 S. Ct. at 575; *see also U.S. ex rel. QSR Steel Corp. v. Safeco Ins. Co. of Am.*, No. 3:14-cv-1017-VAB, 2015 WL 4393576, at *9 (D. Conn. July 16, 2015) ("While there may be a slight interest in having this dispute, which involves property in Connecticut, decided by a Connecticut court, that interest alone without more does not outweigh the policy favoring enforcement of the forum selection clause."  (citation omitted)).

The final public interest factor to consider is which forum "is at home with the law" of the case.  *Id.* at 518 n.6 (quoting *Piper Aircraft*, 454 U.S. at 32).  As noted above, the Subcontract includes a choice-of-law provision requiring that Ohio law govern the dispute. (Subcontract ¶ 29 ("The laws of Ohio shall govern as to all questions arising under this Subcontract Agreement.  All questions regarding the validity, intention or meaning of this Contract or any modification of it relating to the rights and obligations of the parties will be construed and resolved under the law of Ohio.")).

When federal jurisdiction is based on diversity of citizenship, the federal court must apply the conflicts of law rules of the forum state.  *Tatum v. Hunter Eng'g Co.*, No. 93-5526, 1994 WL 228236 at *2 (6th Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).  "The Sixth Circuit has determined that under Kentucky law, section 187 of the Restatement (Second) of Conflict of Laws (1971) governs contractual choice of law provisions." *Heer v. Price*, No. 1:06-CV-114-R, 2007 WL 1100693, at *3 (W.D. Ky. Apr. 11, 2007) (citing *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 397 (6th Cir. 2000)).  Thus, a contractual choice of law provision will govern unless "(a) the chosen state has no substantial relationship to

9

the parties or the transaction and there is no other reasonable basis for the parties choice, or (b) application of the chosen law would be contrary to a fundamental policy of a state . . . ." *Banek, Inc. v. Yogurt Ventures U.S.A., Inc*., 6 F.3d 357, 361 (6th Cir. 1993) (quoting Restatement (Second) of Conflict of Laws § 187).

Plaintiff cannot show that Ohio has no substantial relationship to the parties or the transaction.  Defendant is an Ohio corporation with its principal place of business in Ohio. (Compl. ¶ 2).  Thus, there is a sufficiently reasonable basis for the parties' choice of Ohio law. Nor has Plaintiff shown how the application of Ohio law to the substantive contract claims would be contrary to any fundamental policy of Kentucky.  Other than citing to the KFCA, Plaintiff has not indicated how the application of Ohio law would contravene any fundamental policy of Kentucky.  Therefore, the Court determines that Ohio law would apply to resolve any disputes arising from the Subcontract.  Thus, the Court concludes that Ohio is the "forum that is at home with the law." *Atl. Marine Constr. Co.*, 134 S. Ct. at 575.

Plaintiff has not demonstrated that this is an extraordinary circumstance clearly disfavoring a transfer.  *Id*.  Therefore, the Court will honor the parties' prior agreement to litigate the substantive contract claims in the Southern District of Ohio.

**B.     Stay of Lien Claims**

Plaintiff contends that the local action doctrine prevents transfer of the case in its entirety because the U.S. District Court for the Southern District of Ohio would not have subject matter jurisdiction over the action involving security interests in real property located in Kentucky. (Pl.'s Resp. 4-8).

The local action doctrine involves the "longstanding distinction in the law of venue . . . between 'local' and 'transitory' actions."  14D Charles Alan Wright & Arthur R.

10

Miller, *Federal Practice and Procedure* § 3822 (4th ed. 2017). "Local actions are those directly affecting real property which traditionally must be brought in the district where the real property is located." *Rowe v. Aurora Commercial Corp.*, No. CIV.A. 5:13-21369, 2014 WL 3810786, at *2 (S.D. W. Va. Aug. 1, 2014), *aff'd*, 599 F. App'x 95 (4th Cir. 2015). Conversely, "[t]ransitory actions are essentially any action which is not a local action; a transitory action may be brought in any court with personal jurisdiction over the defendant." *Id*. The nuances of the local action doctrine are hardly settled law. As has been stated, "there is a divergence of authority on nearly every aspect of the doctrine." *Fisher v. Va. Elec. & Power Co.*, 243 F. Supp. 2d 538, 540 (E.D. Va. 2003). Critical among these splits in authority are whether the doctrine affects jurisdiction or venue and whether state or federal law applies when characterizing an action as either transitory or local.

The Sixth Circuit has not yet addressed whether the local action doctrine affects jurisdiction or venue. This is significant, as "Congress abolished the local action doctrine in federal courts" as it relates to venue in the 2011 amendments to the venue statute. Wright & Miller, *supra*, § 3822. If this Court were to hold that the local action doctrine affects jurisdiction instead of venue, the Court would need to decide whether the action was transitory or local, another aspect on which the Sixth Circuit has yet to provide clear guidance.

The Court need not delve into the murky waters of the local action doctrine, however, as the most practical resolution is to sever Counts I, IV, and V (alleging substantive contract claims) and transfer those Counts to the Southern District of Ohio. Meanwhile, the lien claims over real property in Kentucky are stayed in this Court pending the resolution of the contract claims. "Under [Rule 21 of the Federal Rules of Civil Procedure], '[a]ny claim against a party may be severed and proceeded with separately.' District courts have broad discretion to

determine whether to sever claims when doing so advances the administration of justice." *Productive MD, LLC v. Aetna Health, Inc*., 969 F. Supp. 2d 901, 940 (M.D. Tenn. 2013) (citations omitted).

The Court concludes that severance of the lien claims in this instance is the most just and efficient resolution, most significantly because severance of the lien claims will honor the parties' agreement to litigate disputes associated with the contract in the Southern District of Ohio. *See Cent. Contracting, Inc. v. Kenny Constr. Co*., No. 1:11CV158, 2011 WL 13136983, at *2 (N.D. W. Va. Dec. 23, 2011) ("Therefore, while [the plaintiff's] strategy of including its mechanic's lien enforcement claim in the same lawsuit with its common law contract claims may be efficient, under its subcontract it is still obligated to litigate its contract dispute with the defendants in the Northern District of Illinois."). Although the lien claims do arise from the same core facts as the substantive contract claims, the lien claims are merely a cumulative remedy for the underlying contract dispute. *See* KRS 376.010; *Guarantee Elec. Co. v. Big Rivers Elec. Corp*., 669 F. Supp. 1371, 1378 (W.D. Ky. 1987). Moreover, the severance would not prejudice Plaintiff's lien claims as Kentucky is a race-notice jurisdiction and staying the claims in this Court would not place at risk Plaintiff's priority rights to the real property in Kentucky. *See* KRS 376.010(1)-(2). Therefore, the Court concludes that the administration of justice would be materially advanced by severance and transfer of the substantive contract claims. *See Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).

## IV.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.    Counts I, IV, and V are **SEVERED** and **TRANSFERRED** to the U.S. District Court for the Southern District of Ohio.

12

2.      The remaining motion regarding these claims (DN 14) is **PASSED** to the U.S.

District for the Southern District of Ohio.

3.      Counts II and III are **STAYED** in the U.S. District Court for the Western District

of Kentucky pending resolution of Counts I, IV, and V.

**Greg N. Stivers, Judge**
**United States District Court**
March 13, 2017

cc:      counsel of record

13